## Addie G. Weaver, Executrix, v. Chicago Title & Trust Company, Receiver.

### Gen. No. 12,627.

1. DECREE—*when petition to set aside properly denied.* A petition to set aside a decree in chancery in order that a cross-bill setting up a discharge in bankruptcy might be interposed, is properly denied where it appears that the petitioner knew that he was a party defendant to the cause in which the decree was rendered and had designedly refrained from the retaining of counsel.

Weaver v. Chicago Title & Trust Co.

Chancery proceeding. Appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed January 7, 1907.

**Statement by the Court.** Appellant's testator, Henry E. Weaver, was a defendant to a bill filed June 10, 1893, by the Buda Foundry and Manufacturing Company against him and numerous others. He was served with process, and, April 24, 1895, his answer to said bill was filed by Leroy D. Thoman, as his solicitor. Such proceedings were had in the cause that, May 20, 1905, a final decree was entered in the cause as of May 2, 1905. June 16, 1905, Weaver filed and read a petition in said cause, the Hon. M. F. Tuley presiding, which petition is, in substance, as follows: Petitioner is one of the defendants, and sometime during May, 1905, he received a letter from Leroy D. Thoman, an attorney, informing him that a decree was about to be entered in the cause, but not stating the nature of the decree; also stating that said Thoman had defended petitioner twelve years against a stock liability of $15,500, and requesting payment of a certain amount of money on account. Thereafter, petitioner received another letter from said Thoman stating that, May 20, 1905, a decree was entered in the cause, ordering petitioner to pay to the Chicago Title & Trust Company, on or before July 31, 1905, $15,500, which upon investigation petitioner found to be true. Said letters were the first intimation petitioner had that said Thoman had acted as his solicitor in said cause. Shortly after the receipt of said last letter petitioner called on said Thoman and enquired as to his authority to act as petitioner's solicitor in said cause, and was informed by him that Egbert W. Gillett was a defendant in said cause, and claimed to have authority to speak for petitioner, and requested said Thoman to act for petitioner, as defendant in said cause, and that this was his only authority. Petitioner is convinced that said

Thoman acted in good faith; but petitioner says that he never authorized said Gillett to retain or authorized said Thoman to represent petitioner in said cause, and never knew, until said conversation, that said Gillett had requested Thoman so to act. When petitioner was served with summons in said cause, he was hopelessly insolvent, and, during April or May, 1893, he filed a voluntary assignment in the County Court of Cook county, Illinois, and, after turning over to the assignee all his property and assets, not exempt by law, and after the distribution of his assets among his creditors, his unpaid debts amounted, approximately, to $300,000. Petitioner believed and now believes that he had a good and meritorious defense to the claim against him in said cause; but, owing to his said impecunious condition, he believed a decree against him would be uncollectable, and he could not afford the expense of retaining a lawyer to defend him in said claim. September 18, 1899, petitioner filed in the District Court of the United States, for the Northern District of Illinois, a voluntary petition to be adjudged a bankrupt, under the act of Congress in force July 1, 1898, and, November 20, 1899, he obtained, in said court, a discharge from all his provable debts, which existed September 18, 1899, except such as were, by law, exempt from the operation of a discharge in bankruptcy. Thereafter petitioner made a new start in business. The bill of complaint in said cause was filed by Hamline, Scott & Lord, as solicitors for the complainant, of which firm John H. Hamline was the senior member, and was in acting charge of the proceedings in said cause, and, for a number of years before said voluntary assignment proceedings, had been petitioner's attorney, and also, prior to said proceedings, said firm had been attorneys of the firm of Weaver, Getz & Company, of which firm petitioner was the senior member, and, for many years prior to said assignment proceedings, said Hamline and petitioner were

intimate friends, and so, continued till Hamline's death, in the early part of 1904. At the time of filing the petition in said voluntary assignment, Hamline, Scott & Lord represented the Metropolitan National Bank, by reason of which petitioner was represented by other counsel in said assignment proceedings. Shortly after the bill was filed in said cause, said Hamline said to petitioner, that he regretted to have had to name petitioner as a defendant in said cause, to which defendant answered that he understood that Hamline had to do his duty, and that petitioner was so hopelessly insolvent that he did not care what the result of said litigation might be against him. In the bankruptcy proceedings aforesaid a debt for attorney's fees, due Hamline, Scott & Lord, was scheduled, and, a short time after petitioner's discharge in bankruptcy, Hamline congratulated petitioner, and expressed the hope that petitioner would thereafter prosper. About a year afterwards, Hamline, in a conversation with petitioner, referred to the proceedings in said cause, of which petitioner had not heard for a number of years, and had forgotten, and petitioner expressed surprise that the cause was still pending, and enquired of Hamline if petitioner's discharge in bankruptcy would not protect him against a decree in said cause, and Hamline said it would be a complete protection, and that he, Hamline, would not ask for a decree against petitioner. Petitioner, relying on said Hamline's statement, paid no further attention to said cause; but, since the entry of the decree, he has been advised that it would have been necessary for him to file a cross-bill, setting up his discharge in bankruptcy, in order to prevent a decree against him.

Petitioner prays that the decree in said cause may be opened as to him, and that he be allowed to file a cross-bill, a copy of which is attached to his petition.

The petition is verified by petitioner's affidavit.

By agreement of parties, a demurrer was deemed to have been interposed to the petition, and the court sustained the demurrer and dismissed the petition for want of equity. The appeal is from this order.

CHURCH, McMURDY & SHERMAN, for appellant.

SIGMUND ZEISLER, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The bill in Buda Foundry & Manufacturing Company v. Gillett et al. was filed June 10, 1893, and appellant was served with summons as a defendant to the bill, as he admits in his petition. He states in his petition that he never authorized Mr. Thoman to act for him, as his solicitor in the cause, and we think it apparent from the petition that he did not intend to employ any solicitor to represent his interest in the cause, and that, if Mr. Thoman had not filed his appearance, and an answer for him, no appearance or answer would have been filed, and he would have been defaulted and the bill taken for confessed against him. He says, in his petition, that when served with summons in the cause, he was hopelessly insolvent, and "then believed and now believes that he had a good and meritorious defense to the claim made against him in the above entitled cause; but that owing to his insolvent and impecunious condition, at the time he was made a defendant in said cause, and for a long time thereafter, he believed, on the one hand, that a decree against him in said cause would be entirely uncollectable, and, on the other hand, he could not afford the expense of retaining a lawyer to defend him against the said claim." Also, when Hamline said he regretted having been compelled to make him a defendant to the bill, he avers, in his petition, that he answered thus: "To which remark your petitioner replied that he understood very well that said Hamline had to do his

duty in the matter; but that your petitioner was so hopelessly insolvent that he did not care what the result of said litigation might be against him.'' The only reasonable conclusion from these averments is as we think, that Weaver not only did not intend, but deliberately omitted to employ a solicitor in the cause, or to enter his appearance, or make any defense therein. In the petition it is averred that, some time during the month of May, 1905, he received from Mr. Thoman a letter informing him that a decree was about to be entered in the cause. He does not state what time in May he received this letter, but, presumably, it was before May 20, at which date the decree was entered, and, for aught appearing in the petition, it may have been received by him the first week in May, and the petition must be taken most strongly against appellant. Although he admits receiving the letter and, therefore, must be presumed, in the absence of an averment to the contrary, to have had it in his possession when he filed the petition, he does not give its date or the date when he received it. As he resided in the city of Chicago, he must have received it very soon after it was mailed. If he received the letter long enough before May 20 to have presented his petition before that date, and neglected to do so, he was not entitled to a hearing after the entry of the decree, in the absence of a sufficient explanation of the delay. It does not appear from the petition that Mr. Hamline knew that Weaver had not appeared or answered in the cause, and we are inclined to the view that, in stating to Weaver that his discharge in bankruptcy was a complete protection to him, he must have supposed that the discharge was pleaded. So far as appears from the petition he was not informed that it was not. Mr. Hamline was a lawyer of ability and large experience, and being also a man of integrity, he would not have advised Weaver that an unpleaded discharge would protect him. Mr. Hamline

may also have said, in good faith, and on the hypothesis that the discharge was, or would be pleaded, that he would not take a decree against appellant's testator. If the discharge were not pleaded, Mr. Hamline could not have protected Weaver against a decree, because he represented only four of the complainant creditors, a number of other complainants being represented by other counsel, and there being over 100 other creditors, not represented by counsel, whose claims were pressed.

Counsel for appellant assume that the learned chancellor was, and this court is, limited to the consideration of what appears in the petition, in passing on the question, whether the prayer of the petition should be granted. We think this view entirely too narrow. The petition was merely a formal application to the court to set aside the decree as to the petitioner, and permit him to file a cross-bill setting up his discharge in bankruptcy. This was the substance of the matter, and notwithstanding the *ore tenus* demurrer to the petition, the court could rightfully consider any proceedings or evidence in the cause relevant to the application.

Mr. Weaver, May 14, 1898, testified before the master in his own behalf, and was examined by Judge Thoman, and testified, among other things, that he was a defendant in the cause. On cross-examination the witness was interrogated and answered as follows:

Q. "You have been present here upon various occasions, during the taking of the testimony in this case, have you not?"

A. "No, sir."

Q. "Have you not been present before today?"

A. "I was here for a short time one day."

Q. "And has your counsel, Judge Thoman, discussed the matter with you, in reference to your testifying here today?"

A. "Very slightly. I spoke"—

Q. "Well, has he mentioned it to you at all?"

A. "He mentioned it to me this morning, when we came into the court room."

JUDGE THOMAN: "And yesterday afternoon."

Q. "You knew, when you were here several weeks or months ago, you knew you were a party defendant, did you not?"

A. "Yes, but I was in hopes they would skip me through."

The court must be presumed to have been familiar with this evidence, in passing on Mr. Weaver's petition. We are of opinion that the court did not err in dismissing the petition of appellant's testator for want of equity, and the decree will be affirmed.

*Affirmed.*

Mr. Justice BROWN took no part in the consideration or decision of this appeal.